UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:18-cv-00028-RJC-DSC

| | |
|---|---|
| JONATHAN LEE LAMBERT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of )<br>Social Security, )<br>)<br>Defendant. )<br>_____ ) | <u>ORDER</u> |

**THIS MATTER** comes before the Court on the parties' cross Motions for Summary Judgment, (Doc. Nos. 11, 13); the Magistrate Judge's Memorandum and Recommendation ("M&R"), recommending that this Court uphold the decision of the Commissioner, (Doc. No. 18); Plaintiff's Objections to the M&R, (Doc. No. 19); Defendant's Response to Plaintiff's Objections, (Doc. No. 20); and the parties' briefs and exhibits in support. The motions are ripe for adjudication.

I. BACKGROUND

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, the Court adopts the facts as set forth in the M&R.

II. STANDARD OF REVIEW

A. Review of the Magistrate Judge's M&R

A district court may assign dispositive pretrial matters to a magistrate judge

for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) and (B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). De novo review is also not required "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id.

B. Review of a Final ALJ Decision under the Social Security Act

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty in her determination that Plaintiff was not disabled under the Social Security Act. See 42 U.S.C. §§ 405(g) and 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King

v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff makes three objections to the M&R: (1) The M&R erred in concluding that a limitation on pace necessarily accounts for difficulties in concentration or persistence, (2) the M&R finds the ALJ decision was based on

3

substantial evidence, without making a finding on the claim of error under SSR 96–8p, and (3) the M&R does not address that GED Reasoning Level 2 jobs require the ability to carry out detailed instructions. After conducting a de novo review of the M&R, Plaintiff's Objections thereto, and the record, the Court agrees with the M&R's analysis. The Court addresses each of Plaintiff's objections in turn.

### A. The M&R correctly concluded that the ALJ's RFC accounted for Plaintiff's moderate limitations in concentration, persistence, or pace ("CPP").

Plaintiff accuses the M&R of relying on a blanket and mechanical rule that pace or production-rate limitations always account for a claimant's limitations in CPP. Plaintiff misconstrues the M&R's holding.

"[T]he ability to perform simple tasks differs from the ability to stay on task." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). "Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. As a result, Mascio stands for the rule that an ALJ must either adopt a limitation that addresses a claimant's ability to stay on task or explain why such a limitation is unnecessary, even in the face of the claimant's CPP limitations. Grant v. Colvin, No. 1:15-CV-00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016). Mascio does not stand for the proposition, however, that remand is automatically warranted when an ALJ finds a moderate limitation in CPP but fails to provide a detailed analysis of a plaintiff's ability to stay on task. Holbrook v. Berryhill, 2018 WL 325244, at *4, No. 3:16-cv-00713 (W.D.N.C. Jan. 8, 2018). So long as an ALJ's RFC assessment is supported by substantial evidence in the record, and other

inadequacies in the ALJ's decision do not frustrate meaningful review, an ALJ has met his Mascio duty. Mascio, 780 F.3d at 636 ("[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."). Remand for lack of discussion is appropriate only if the ALJ's opinion is "'sorely lacking' in a manner that 'frustrates meaningful review.'" Hubbard v. Berryhill, No. 3:17-CV-677, 2018 WL 3744017, at *6 (W.D.N.C. Aug. 7, 2018) (quoting Ponder v. Berryhill, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017)).

Contrary to Plaintiff's assertion, the M&R explained why this case presents one of the instances where, despite finding that a claimant has moderate limitations in CPP at Step Three, the ALJ explained why those moderate limitations do not preclude Plaintiff from performing work consistent with the RFC. At Step Three, the ALJ noted that "the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention," citing testimony and exhibits to support this assertion. (Doc. Nos. 10 to 10-1: Administrative Record ("Tr.") at 15). Throughout her Step Five discussion, the ALJ elaborated on specific—and numerous—instances where Plaintiff's medical examiners found him to exhibit no, or at most, minimal, difficulties in maintaining concentration and persistence.[1] Summarizing mental health professionals' findings,

---

[1] (See, e.g., Tr. 17: (September 2013: "[T]he claimant's memory, attention and concentration were not impaired, he had average estimated intelligence, and he was fully oriented."); ("On exam, . . . the claimant was fully oriented, awake, and alert.");

5

the ALJ concluded that "while in treatment, [Plaintiff] has often been found to have full/bright affect and good mood, linear and goal-directed non-delusional thought processes . . . intact insight and judgment. . . . pleasant and cooperative with caregivers," and able to demonstrate "good eye contact." (Tr. 17). "Since his substance abuse remission, he has regularly denied psychotic symptoms, perceptual abnormalities, and suicidal and homicidal ideations." (Id.). The ALJ noted that treatment of Plaintiff's "mental conditions has generally been conservative," and that "treatment notes reflect good or excellen[t] response to treatment and sobriety"—"He was repeatedly noted to be doing well during periods of compliance with treatment and sobriety." (Tr. 18). Accordingly, the ALJ found that limiting Plaintiff to "simple repetitive routine tasks in a workplace requiring no fast-paced or production-rate work and few, if any, workplace changes" and "only occasional

---

Tr. 18: ("[H]is eye contact with the examiner was good and he was cooperative. . . . He was found to be capable of handling activities of daily living without assistance and currently employed."); (October and November 2013: Plaintiff's "thinking was linear and goal-directed" and his "cognition and memory were intact); (May 2016: Plaintiff's "thought processes were linear, goal-directed and nondelusional with no paranoia"); (July and August 2016: Plaintiff indicated that "he was doing better with no auditory or visual hallucinations"); (November 2016: Plaintiff "indicated that he was doing great with his medications and he enjoyed nature and walking"); (December 2016: Although Plaintiff skipped his medicine for three to four days and had hallucinations as a result, Plaintiff "acknowledged improvement in his symptoms once he restarted his medications"); Tr. 20: (December 6, 2013: State agency mental consultant finds Plaintiff "capable of simple repetitive routine tasks in a low-stress and low social setting"); (November 21, 2014: State agency mental consultant finds Plaintiff "capable of understanding, remembering and completing short, simple instructions/tasks; may have some trouble interreacting effectively with others and sustaining socially appropriate behavior in highly stressful situations; and tolerating routine demands. In addition, it was noted that substance abuse played a significant role in his symptoms, but he was mainly sober and in consistent treatment.")).

6

interaction with the general public," would account for any moderate limitations in CPP Plaintiff might have. (Tr. 15). The record and the ALJ's detailed explanation of the record evidence support this finding,[2] and the Court finds no reversible error on this ground.

### B. The M&R correctly found that the ALJ adequately explained her analysis.

Next, Plaintiff faults the ALJ for finding that the ALJ decision was based on substantial evidence without making a finding on the claim of error under SSR 96–

---

[2] The Court notes that the Fourth Circuit recently admonished an ALJ for limiting a claimant to performing work that does not require "a production rate or demand pace" without further explanation:

> Thomas argues that her RFC, as stated by the ALJ, does not account for her moderate limitations in concentration, persistence, and pace—even though the RFC limits her to jobs that do not require a "production rate" or "demand pace." We decline to resolve that question. As discussed above, *the ALJ's evaluation of Thomas's mental impairments for purposes of the RFC contains too little explanation for us to meaningfully review it*. Without further explanation, we simply cannot tell whether the RFC finding—particularly the portion restricting Thomas to jobs that do not require a "production rate" or "demand pace"—properly accounts for Thomas's moderate limitations in concentration, persistence, and pace. On remand, the ALJ will need to establish for how long, and under what conditions, Thomas is able "to focus [her] attention on work activities and stay on task at a sustained rate." Only then will we or any court be able to meaningfully review the ALJ's RFC finding.

Thomas v. Berryhill, 916 F.3d 307, 312 n.5 (4th Cir. 2019) (internal citations omitted) (emphasis added), as amended (Feb. 22, 2019). Unlike in Thomas, however, the ALJ here provided ample discussion of how Plaintiff's mental impairments impact his ability to perform work-related tasks. Therefore, the Court finds that, in light of the ALJ's full decision and well-reasoned analysis, the ALJ's RFC limitation to a nonproduction pace passes Thomas muster because the ALJ contextualized and explained in what circumstances Plaintiff could perform work for a full workday and workweek.

8p.  Plaintiff contends that the controlling agency ruling, SSR 96–p, requires an "explicit function-by-function analysis" in formulating the RFC by a "narrative discussion" describing each conclusion." Mascio, 780 F.3d at 636; SSR 96–8p. Plaintiff claims that "the ALJ's decision lacks any explanation of the mental RFC." (Doc. No. 19 at 5).  Plaintiff's baseless assertion is troubling.

Despite Plaintiff's unsupported assertion, the Court finds the ALJ's explanation of Plaintiff's mental RFC quite comprehensive and commends the ALJ for her excellent analysis.  As discussed above, the ALJ presented a thorough and logical narrative discussion of the severity of Plaintiff's mental impairments and how those mental impairments might interfere with his ability to work.  The ALJ cited ample findings from mental health professionals demonstrating that Plaintiff's mental limitations would not prevent him from engaging in substantial gainful activity.  Additionally, the ALJ surveyed and discussed Plaintiff's daily activities in constructing a narrative and analysis of Plaintiff's functional capabilities.  The ALJ noted that, in his function report, Plaintiff acknowledged significant daily activities, such as getting out of the house daily, shopping, walking, and going to his parents' house.  (Tr. 19). The ALJ affirmed that medical records corroborated this finding: "the medical record reflects significant work activity and/or chores," such as landscaping and roofing work, mowing the grass, painting fences, and hauling lumber.  (Id.).  The ALJ acknowledged that Plaintiff himself indicated that he "felt quite productive" in May 2014 when he was working with his father.  (Id.).  The ALJ reasoned that, although this "work activity did not constitute disqualifying

8

substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (Tr. 19–20). Additionally, the ALJ included in her explanation the fact that Plaintiff had reported "regular contact with friends," "repeatedly indicated . . . abusing drugs and/or alcohol with friends," "visiting non-abusing friends," and "participating in holidays or special occasions with his family." (Tr. 19).

Contrary to Plaintiff's assertion, the ALJ did not only cite evidence supporting her conclusion, she provided ample analysis and explanation, satisfying Fourth Circuit case law *and* the controlling agency ruling.[3] The ALJ cited evidence—both medical facts and nonmedical evidence—and linked this evidence to her conclusion that when Plaintiff is compliant with his treatment, he is able to think linearly, be goal-directed, display intact insight and judgment, and accomplish tasks—both work-related and personal—consistent with the RFC. (Tr. 17–21). Indeed, she concluded that "[t]he treatment notes reflect good or excellen[t] response to treatment and sobriety." (Tr. 18). She also noted that the absence of

---

[3] See, e.g., Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (faulting the ALJ for never explaining "how he concluded—*based on th[e] evidence*—that [the claimant] could actually perform the tasks required by 'medium work'"); Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (admonishing ALJs to "[s]how [their] work"); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (instructing ALJs to "build an accurate and logical bridge from the evidence to [their] conclusion" (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000))); Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (discussing that SSR 96–8p requires that an ALJ's RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" and also "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations." (quoting SSR 96–8p)).

any other inpatient treatment for serious mental health symptoms—besides a brief hospitalization for acute mental symptoms in September 2013—indicated that Plaintiff's symptoms and limitations might not be as severe as alleged:

> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor. All the foregoing, indicate that the claimant's allegations of symptoms and limitations is not as severe as alleged.

(Tr. 19).

Finally, the ALJ also explained how the State agency mental consultants' Assessments also supported the RFC determination. The ALJ noted that, on December 6, 2013, the mental consultant found that Plaintiff was "capable of simple repetitive routine tasks in a low-stress and low social setting." (Tr. 20). And the ALJ also reported that, on November 21, 2014, the mental consultant found Plaintiff "capable of understanding, remembering and completing short, simple instructions/tasks" although Plaintiff "may have some trouble interreacting effectively with others and sustaining socially appropriate behavior in highly stressful situations" and "tolerating routine demands." (Id.). The ALJ also included that the second assessment performed by the State agency mental consultant "noted that substance abuse played a significant role in [Plaintiff's] symptoms, but he was mainly sober and in consistent treatment," and accordingly found that Plaintiff "should be capable of performing work described even with his substance abuse." (Id.). The ALJ gave great weight to these assessments as the State agency consultants "are licensed psychologists who had the benefit of reviewing the record

as a whole on the date of the assessment[s]" and because the "assessments [were] consistent with the record as a whole and the [RFC]." (Id.). After having (1) carefully discussed the relevant medical and nonmedical evidence, (2) detailed a narrative analysis of Plaintiff's mental health symptoms and limitations, as well as his daily activities and treatment history, and (3) scrutinized and explained how the record evidence supports the RFC, the ALJ concluded that Plaintiff is able to perform work consistent with the RFC. That is, she concluded that Plaintiff can perform "a full range of work at all exertional levels" that involves "only simple repetitive routine tasks in a workplace requiring no fast-paced or production-rate work and few, if any, workplace changes" and "only occasional interaction with the general public." (Tr. 15).

After having conducted a de novo review, the Court finds that ALJ's decision was both based on substantial evidence and complied with SSR 96–p. The ALJ "buil[t] an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). Accordingly, because the ALJ's decision is not sorely lacking in a manner that frustrates the Court's ability to conduct a meaningful review, the Court finds remand inappropriate. Hubbard, 2018 WL 3744017, at *6 (concluding that remand for lack of discussion is appropriate only if the ALJ's opinion is "'sorely lacking' in a manner that 'frustrates meaningful review.'" (quoting Ponder, 2017 WL 1246350, at *4 (W.D.N.C. Mar. 31, 2017))).

C. The M&R correctly concluded that no apparent conflict existed between the VE's testimony and the DOT.

11

Finally, Plaintiff reiterates his argument advanced in his initial summary judgment briefing that an apparent conflict existed between a limitation to perform simple, routine, repetitive tasks and jobs requiring Reasoning Level 2. The Court disagrees.

In Pearson v. Colvin, 810 F.3d 204, 209 (4th Cir. 2015), the Fourth Circuit held that the ALJ has not fully developed the record if any unresolved conflicts exist between the VE's testimony and the DOT. Pearson elevated the ALJ's responsibility in addressing apparent conflicts. Now, an ALJ cannot rely unquestioningly on a VE's testimony; instead, an ALJ must ask the VE whether his or her testimony conflicts with the DOT. Id. at 208. And even if the VE answers that no conflicts exist, the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." Id. at 208–10. This means that the ALJ must identify where the VE's "testimony seems to, but does not necessarily, conflict with the [DOT]." Id. at 209.

The DOT's Reasoning Development scale has six levels: Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. See DOT, App. C, 1991 WL 688702. Reasoning Level 2 requires the ability to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Id. (emphasis added). Here, when the ALJ asked the VE for representative occupations that Plaintiff could perform given his RFC, the VE

identified three jobs: (1) "cleaner, hospital"[4] (2) "warehouse worker,"[5] and (3) "washer."[6] (Tr. 22). According to the DOT, all these jobs require a Reasoning Level of 2.

Recently the Fourth Circuit has held that an apparent conflict exists "between a limitation to 'short, simple instructions' and a need to carry out "detailed but uninvolved . . . instructions' jobs (as found in jobs requiring Level 2 Reasoning)." Thomas v. Berryhill, 916 F.3d at 313–14. However, in this case, Plaintiff has no limitation comparable to the limitation which the Fourth Circuit found problematic in Thomas. Unlike in Thomas, the ALJ did not recognize that Plaintiff had any limitations in her ability to follow or comprehend instructions that needed to be accounted for in the RFC. In fact, the ALJ expressly noted that "the record shows that [Plaintiff] was able to . . . follows instructions . . . ." (Tr. 14). Therefore, she did not include any limitation in Plaintiff's RFC regarding short and simple instructions because she found that Plaintiff had no such limitations for which to compensate.

The Court finds that a meaningful difference exists between a limitation to *perform* only simple, repetitive, routine tasks—Plaintiff's RFC limitation here—and a limitation to only receive and follow short, simple instructions—the RFC limitation in Thomas. The first limitation accounts for a claimant's ability to *perform* certain job tasks while the second limitation accounts for a claimant's

---

[4] DOT 323.687-010, 1991 WL 672782.
[5] DOT 922.687-058, 1991 WL 688132.
[6] DOT 599.687-030, 1991 WL 684654.

13

ability to *comprehend* job tasks. Thomas is distinguishable from the case at bar.[7]

Moreover, this Court has consistently held that no apparent conflict exists between a limitation to perform simple, repetitive, routine tasks and jobs with Reasoning Level 2.[8] Therefore, the Court rejects Plaintiff's allegation of error and finds that no apparent conflict existed under Pearson.

## IV. CONCLUSION

After an independent and thorough review of the M&R, Plaintiff's Objections thereto, and a de novo review of the record, the Court concludes that the

---

[7] This Court recently rejected Plaintiff's argument, and the Court's decision today is consistent with that decision:

> Plaintiff's RFC does not limit the number of instructions Plaintiff is able to follow, resulting in no apparent conflict for the ALJ to identify. The Court acknowledges that the Fourth Circuit in Thomas v. Berryhill has held an apparent conflict arises between an RFC of "short, simple instructions" and "detailed but uninvolved . . . instructions" in jobs requiring Level 2 reasoning. Thomas v. Berryhill, No. 17-2215 at *9 (4th Cir. 2019). Here, Plaintiff's RFC of "simple, routine, repetitive tasks" does not conflict with the DOT definition of Level 2 reasoning.

Kiser v. Berryhill, No. 3:17-CV-00739, 2019 WL 1173376, at *6 n.2 (W.D.N.C. Mar. 13, 2019).

[8] See, e.g., Walters v. Berryhill, No. 3:17-CV-538, 2018 WL 7200665, at *6 (W.D.N.C. Nov. 5, 2018), report and recommendation adopted, No. 3:17-CV-00538, 2019 WL 427330 (W.D.N.C. Feb. 4, 2019); Wilhelm v. Berryhill, No. 5:17-CV-00138, 2018 WL 4705562, at *5 (W.D.N.C. Sept. 29, 2018) ("Therefore, no apparent conflict exists between jobs having a Reasoning Level of 2 or 3 and a limitation to only performing simple, routine, repetitive tasks."); Gaston v. Berryhill, 1:17-CV-182, 2018 WL 3873593, at *4 (W.D.N.C. Aug. 15, 2018); Corvin v. Berryhill, No. 5:17-CV-92, 2018 WL 3738226, at *4 (W.D.N.C. Aug. 7, 2018) ("Reasoning level 2 jobs 'do not imply an apparent conflict with a work limitation to simple, routine, repetitive work.'" (quoting Bethea v. Berryhill, 5:17-CV-145, 2018 WL 1567356, at *4 (W.D.N.C. Mar. 30, 2018)).

14

recommendation to grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment is correct and in accordance with law. Accordingly, the findings and conclusions of the Magistrate Judge are accepted and Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS THEREFORE ORDERED THAT:**

(1) The Magistrate Judge's M&R, (Doc. No. 18), is **ADOPTED**;

(2) Defendant's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED**;

(3) Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**; and

(4) The Clerk of Court is directed to close this case.

Signed: March 25, 2019

Robert J. Conrad, Jr.
United States District Judge